**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **HANS PONSEN,** | ) | |
| **ANNE E. PONSEN** | ) | **Case No. 11-17823-BFK** |
| | ) | **Chapter 7** |
| **Debtors** | ) | |
| | ) | |
| **JANET M. MEIBURGER,** | ) | |
| **CHAPTER 7 TRUSTEE** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| vs. | ) | **Adversary Proceeding No. 13-01003** |
| | ) | |
| **SANDRA HARRISON HILBURN** | ) | |
| | ) | |
| **Defendant** | ) | |

**MEMORANDUM OPINION
GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT**

The matter comes before the Court on the Plaintiff's Motion for Summary Judgment. Docket No. 24. The Defendant filed an Opposition. Docket No. 29. The Court heard argument on the Motion on October 8, 2013. The Court finds that there are no material facts in dispute, and that the Plaintiff is entitled to judgment as a matter of law. The Motion will be granted.

**Undisputed Facts**

The following facts are not genuinely in dispute in this case:

*A. The Chester H. Smith Revocable Trust.*

1.  The Debtor, Ms. Ponsen, and the Defendant, Ms. Hilburn, are sisters. On or about June 30, 2003, their father entered into a Restatement of the Chester H. Smith Revocable Trust dated March 19, 1996 (hereinafter, the "Trust"). The Trust, Article VI(B), provides in part:

1

>The balance of such property, in equal shares, free of trust, to my descendants then living, per stirpes, provided however, that the share, if any, of my daughter, ANNE ELIZABETH PONSEN, or of her descendants if Anne predeceases me (hereinafter "Anne's Share"), shall include the real property with improvements thereon located at 8510 Cyprus Place, Alexandria, Virginia 22308, the unimproved real property located in Rio Rancho Estates, Bernallilo [sic] County, New Mexico, and Unit B6, L23 of Regency Cove, a cooperative (commonly known as Lot B6, L23, Regency Cove Mobile Home Park, 4851 Gandy Boulevard, Tampa, Florida) (hereinafter collectively referred to as "the Property"). If the Property's value at the date of my death, as determined by an independent certified appraiser chosen by the Trustees, is in excess of the value of Anne's Share, Anne or her descendants, as the case may be, shall have the exclusive right within a reasonable time after my death (not to exceed one year) to purchase such excess value of the Property from the Trustees utilizing the same valuation referred to above. Should such right be declined or not exercised within one year from the date of my death, the portion of the Property not purchased by Anne or her descendants shall be sold by the Trustees upon terms acceptable to such Trustees, and the sale proceeds shall be distributed in the same manner as the other trust estates. I direct that after my death, ANNE ELIZABTH PONSEN, HANS PONSEN and/or JOHAN PONSEN, and each of them, shall have the exclusive right to reside at the Property, free of rent or other house expenses, until the Property is either distributed or sold pursuant to the foregoing provisions.

2.      Section VI(B) was, in effect, an equalizing provision. If Ms. Ponsen's share, as valued by an appraiser, exceeded her sister's share, then Ms. Ponsen had the right to "purchase such excess value of the Property from the Trustees." If she did not exercise that right within one year of the date of their father's death, then the "portion of the Property" (the "Property" apparently being all three Properties together) was to be sold and the proceeds distributed accordingly.

3.      Mr. Smith died on February 22, 2005. The Debtor, Ms. Ponsen, was named as Trustee of the Trust. *Id*., Article I.

4.      Ms. Ponsen deeded the Alexandria property, as Trustee of the Trust, to herself as grantee, by Deed recorded on August 5, 2005. Trustee's Ex. C. She later transferred this property to herself and her husband as tenants by the entirety. Trustee's Ex. D.

5. She deeded the property at 4851 W. Gandy Boulevard, B-6, Lot 23, Tampa Florida (which later became known as "Lot 2" in the Settlement Agreement described below), as Trustee of the Trust, to herself as grantee, by a Deed recorded on August 16, 2005. Trustee's Ex. E.

6. The parties agree that Ms. Ponsen deeded the third property, which was unimproved, located in Rio Rancho Estates, Bernalillo County, New Mexico, as Trustee of the Trust, to herself as grantee.

7. The parties also do not dispute that Ms. Ponsen disposed of the New Mexico Property, and acquired the property known as 4851 W. Gandy Boulevard, B-6, Lot 24, Tampa, Florida (which later became known as "Lot 1" in the Settlement Agreement) on November 21, 2007, using the proceeds from the New Mexico property. Trustee's Ex. J.

8. On or about February 1, 2006, Ms. Ponsen's counsel tendered a cashier's check to Ms. Hilburn's counsel in the amount of $550,009.43, purportedly representing Ms. Hilburn's share of the estate, less a $15,000 reserve. Trustee's Ex. F. Ms. Hilburn, who was represented by counsel, chose not to cash this check.

*B. The Fairfax Litigation and the Settlement Agreement.*

9. In 2007, Ms. Hilburn brought a civil action against her sister in the Circuit of Fairfax, Virginia, alleging that Ms. Ponsen breached her fiduciary duties under the Trust (*Hilburn v. Ponsen*, Civil No. 2007-00457).

10. On May 2, 2011, the parties entered into a Settlement Agreement. Under the Settlement Agreement:

(a) Ms. Ponsen agreed to convey the three properties to Ms. Hilburn, subject to any outstanding mortgages. The Alexandria property was agreed to have a value of $630,000, less a mortgage of approximately $336,000; the 4851 W. Gandy Boulevard

    B-15 ("Lot 1") property was agreed to have a value of $150,000; and the 4851 W. Gandy Boulevard B-15 ("Lot 2") property was agreed to have a value of $60,000.[1]

(b) The parties agreed that Ms. Hilburn's share of the Trust was $750,000. The parties further agreed that the total value of the properties (after deducting the mortgage on the Alexandria property) was $510,000. Accordingly, the deficiency amount owed from Ms. Ponsen to Ms. Hilburn was set at $240,000.

(c) The parties further agreed: "WHEREAS, Ponsen, *having no additional assets from which to make up the deficiency,* will execute and deliver to Hilburn a Promissory Note for the outstanding amount owed…" (Emphasis added).

11.    Pursuant to the terms of the Settlement Agreement, Ms. Hilburn (and her husband, in the case of the Alexandria property) transferred the three Properties to her sister. The Deeds were recorded on the following dates:

| Property | Date of Transfer (Recordation) |
| --- | --- |
| 510 Cyprus Place, Alexandria, VA | 5/31/2011  (Trustee's Ex. L) |
| "Lot 1", Tampa, FL | 5/20/2011  (Trustee's Ex. M) |
| "Lot 2," Tampa, FL | 5/20/2011  (Trustee's Ex. N) |

*C. Ms. Ponsen's Bankruptcy.*

12.    On October 28, 2011, Ms. Ponsen filed a voluntary Chapter 7 petition with this Court. Ms. Meiberger was appointed as the Trustee.

13.    Ms. Hilburn filed a proof of claim in the case. Proof of Claim No. 10-1. The Proof of Claim asserted under oath that as of the filing of the case, Ms. Ponsen owed Ms. Hilburn the sum of $810,042.26. The consideration for the claim was alleged to be: "SETT AGREE (CL2007-457/FAIRFAX CO) & 2 PROM NOTE. Real Property has been deeded to Claimant; however, Chapter 7 Trustee has indicated an interest in setting aside the transfers as preferential payments." *Id.*

---

[1]  For the remainder of this Opinion, these three properties will be referred to as the "Properties."

14. The filed claims in the case total $928,598.32, including Ms. Hilburn's claim. The IRS claims $3,288.41 in a priority claim.

15. On January 30, 2012, Ms. Hilburn filed a Complaint to Determine Dischargeability of Debts against Ms. Ponsen under Section 523 of the Bankruptcy Code. Adv. Pro. No. 12-01046-BFK.

16. Paragraph 4 of Ms. Hilburn's Complaint alleged: "Plaintiff is a creditor in the above referenced Chapter 7 bankruptcy proceeding."

17. Further, paragraphs 51 and 52 of Ms. Hilburn's Complaint allege as follows:

51. At the time the Settlement Agreement was signed by the Defendant/Debtor, Defendant/Debtor knew that she was not in a position to repay the total amount due to the Plaintiff, although Plaintiff did not know this.

52. At the time the Promissory Note was executed by the Defendant/Debtor, Defendant/Debtor knew she was not in a position to repay the amount due to the Plaintiff under the terms of the Promissory Note, although Plaintiff did not know this.

18. After a trial on the merits (at which Ms. Ponsen proceeded *pro se*), the Court granted Ms. Hilburn a non-dischargeable judgment pursuant to Section 523(a)(4) of the Bankruptcy Code (defalcation while acting in a fiduciary capacity).[2]

19. The Trustee filed this adversary proceeding against Ms. Hilburn on January 3, 2013.

## Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the Order of Reference of the U.S. District Court for this District dated August 15, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(F).

---

[2] The Court did not grant a judgment in favor of Ms. Hilburn for the value of the three properties that are the subject of this adversary proceeding. It was not clear at the time that the Trustee would bring any claims against Ms. Hilburn for the recovery of these properties, nor was it clear that the Trustee would succeed in her claims to recover the properties or their value pursuant to Sections 547 and 550 of the Bankruptcy Code.

Summary judgment is appropriate where there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056. The moving party has the initial burden of showing that there are no material facts in dispute, and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). When the moving party has met its initial burden, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

Whether a fact is material or not depends on the substantive law at issue in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.Rule Civ.Proc. 1." *Celotex Corp.,* 477 U.S. at 327.

While the underlying facts are not genuinely disputed, Ms. Hilburn disputes that the Trustee has met her burden of proof as to all of the elements of a preference under Section 547(b). Specifically, Ms. Hilburn asserts that:

(a) The Properties were not property of the estate – 11 U.S.C. §547(b) ("any transfer of an interest of the debtor in property"); rather, Ms. Hilburn asserts that the Properties were property of the Trust;

(b) She, Ms. Hilburn, was not a creditor at the time of the transfers (11 U.S.C. § 547(b)(1));

6

(c) She was not an "insider" of her sister under Section 101(31) of the Bankruptcy Code, and the transfers occurred more than 90 days before Ms. Ponsen filed her petition in bankruptcy; and

(d) The Trustee has not satisfied her burden to prove that the Debtor was insolvent on the date of the transfers (11 U.S.C. § 547(b)(2)).

The Court will address each of these arguments, in turn.

*A. Were the Properties property of Ms. Ponsen's estate?*

Section 541(d) of the Code provides that where property is held in trust for another, the estate holds bare legal title, and not equitable title, to the property. 11 U.S.C. § 541(d). There is certainly authority for the proposition that the Trustee cannot recover as a preference the transfer of property that was held in trust for another. *See Begier v. Internal Revenue Serv.*, 496 U.S. 53, 59 (1990); *In re John A. Rocco Co., Inc.,* 2013 WL 1867909, at *8 (Bankr. D.N.J. 2013); *In re Furr's Supermarkets, Inc.,* 485 B.R. 672, 709 (Bankr. D.N.M. 2012); *In re Holmes Envtl., Inc.,* 287 B.R. 363, 382 (Bankr. E.D. Va. 2002) (escrowed funds held in express trust cannot be the subject of an avoidance action). *See also Old Republic Nat'l Title Insurance Co. v. Tyler (In re Dameron),* 155 F.3d 718, 721 (4th Cir. 1998) (beneficial interest in property held in express trust is excluded from the bankruptcy estate, under Section 541(d)). The nature of the parties' interests in the Properties is determined by State law. *Butner v. United States*, 440 U.S. 48, 55 (1979). Here, although two of the Properties are located in Florida, the Trust was executed by a Virginia resident and decedent. The Court finds that Virginia law controls the interests of the parties.

An express trust is created when the parties affirmatively manifest an intention that certain property be held in trust for the benefit of a third party. *In re Dameron*, 155 F.3d at 722. There must be circumstances "which unequivocally show an intention that the legal estate was

vested in one person, to be held in some manner for some purpose on behalf of another." *Id.*, (quoting *Broaddus v. Gresham*, 181 Va. 725, 26 S.E.2d 33, 35 (1943)). The burden of establishing the existence of an express trust rests with the party seeking to establish the trust, here, Ms. Hilburn. *In re LandAmerica Fin. Group, Inc.,* 2009 WL 1269578, at *8 (Bankr. E.D.Va. 2009).

In this case, two of the Properties – the Alexandria Property, and Lot 2 in Tampa – were transferred from Ms. Ponsen as Trustee of the Trust to herself, individually.[3] After these transfers, the Properties were titled in Ms. Ponsen's name alone. The Trust provides that two of the Properties – the Alexandria property, and Lot 2 in Tampa – were included in Ms. Ponsen's share of the Trust. Under the Trust, title to each of the Properties went to Ms. Ponsen, subject to the equalizing provision. Under the equalizing provision (Trust, Art. VI(B)), Ms. Ponsen had the right to "purchase such excess value of the Property from the Trustees." Nowhere does the Trust state that the Properties are to be held "in trust" until conclusion of the equalization process (appraisal and payment). Further, the Properties were never held in trust for Ms. Hilburn as a beneficiary of the Trust. They were a part of Ms. Ponsen's share, subject to the equalizing provision of the Trust.

The Trust does go on to provide:

> Should such right [the right of Ms. Ponsen to purchase "such excess value" of the Properties] be declined or not exercised within one year from the date of my death, the portion of the Property not purchased by Anne or her descendants shall be sold by the Trustees upon terms acceptable to such Trustees, and the sale proceeds shall be distributed in the same manner as the other trust assets.

Trust, Sec. VI(B), pp. 5-6.

---

[3] One of the Properties, Lot 1 in Tampa, was never the subject of the Trust. Apparently, Ms. Ponsen sold the New Mexico property, and purchased Lot 1 with the proceeds.

8

Although this might appear to indicate that the Properties would continue to be held in trust for purposes of enforcing the equalizing provision, there was no restriction in the Trust that the Properties would continue to be held in trust subject to completion of the equalizing process. To the contrary, the Properties could be freely transferred to Ms. Ponsen (and were in fact transferred), subject to the equalizing provision. Once Ms. Ponsen failed to live up to the equalizing provision, Ms. Hilburn had a claim for damages against Ms. Ponsen, but that does not mean that the Properties continued to be held in trust for the benefit of Ms. Hilburn until the equalizing process had been concluded. This is not to say that Ms. Ponsen was a bona fide purchaser of the Properties from the Trust; she almost certainly was not. But, the fact that Ms. Ponsen may not qualify as a bona fide purchaser does not answer the question of whether the Properties continued to be held in trust for the benefit of Ms. Hilburn, after the transfers to Ms. Ponsen.

Moreover, Ms. Hilburn has never treated the properties as trust property, and has never made an *in rem*, express trust claim to the properties, as opposed to claims for money damages against Ms. Ponsen for her breaches of fiduciary duties. In her action against Ms. Ponsen in the Fairfax County Circuit Court, Ms. Hilburn did not seek any *in rem* relief against the properties; rather, her claims were for an accounting and for money damages against Ms. Ponsen for breach of fiduciary duty. Trustee's Ex. K. In the Settlement Agreement, the Properties were not restored to the Trust, subject to the equalizing provision. The Properties were transferred directly from Ms. Ponsen to Ms. Hilburn, in partial satisfaction of Ms. Hilburn's claims for money damages in

the Fairfax lawsuit. Finally, in her Proof of Claim filed in this case, Ms. Hilburn claimed the $510,000 value of the three Properties, plus the $240,000 Note and other, related costs.[4]

Ms. Hilburn had an interest in the Trust's equalizing provision, and claims for money damages arising out of Ms. Ponsen's breaches of fiduciary duties, but she did not have any continuing *in rem* rights in any of the Properties after their transfer to Ms. Ponsen. Further, having pursued claims for money damages, and having accepted the Properties in partial satisfaction of her claims for money damages, it is simply too late for Ms. Hilburn to claim that the Properties are held in trust for her benefit.

> B. *Was Ms. Hilburn a Creditor at the time of the Transfers?*

Ms. Hilburn next claims that she was not a creditor at the time of the transfers. Rather, she claims that she was merely a "wronged party." A creditor is defined as one with a claim against the debtor that arose at the time of, or before, the order for relief. 11 U.S.C. § 101(10)(A). A claim is defined as a right to payment, whether or not such right is reduced to a judgment, or is liquidated, unliquidated, matured or unmatured, fixed or contingent. 11 U.S.C. § 101(5).

Ms. Hilburn was unquestionably a creditor at the time of the transfers. Ms. Hilburn had just entered into the Settlement Agreement with Ms. Ponsen, in which Ms. Ponsen acknowledged that she was indebted to Ms. Ponsen in the amount of $750,000. Ms. Ponsen owed Ms. Hilburn the sum of $240,000 as a result of the Settlement Agreement, and she executed two Promissory Notes in connection with the settlement. Ms. Hilburn filed a Proof of Claim in this case, stating under oath that she is a creditor. Further, Ms. Hilburn filed a Complaint to Determine

---

[4] It is clear that Ms. Hilburn did not take the Properties in the Settlement in order to give effect to the Trust's equalizing provision. She took them directly from Ms. Ponsen, in partial satisfaction of her claims against Ms. Ponsen. Ms. Hilburn has never suggested that the Properties should be put back in the Trust, and the parties restored to the *status quo ante*.

Dischargeability of Debts, in which she claimed to be a creditor of Ms. Ponsen. *Hilburn v. Ponsen*, Adv. Pro. No. 12-1046-BFK, Complaint, ¶ 4.

There is no genuine dispute that Ms. Hilburn was a creditor of Ms. Ponsen at the time of the transfers.

  *C. Was Ms. Hilburn an Insider on the Date of the Transfers?*

Section 101(31) states that the definition of "insider" includes the examples given thereafter in the statute. The term "includes" means that it is not limiting, i.e., is non-exclusive. 11 U.S.C. § 102(3). Section 101(31) of the Code defines an insider, in the case of an individual, as among other things, a relative of the Debtor. The term "relative" is defined as a person within the third degree of consanguinity, which includes siblings. 11 U.S.C. § 101(45).

The transfers in this case took place on May 20 and May 31, 2011. They were outside of the 90 days preceding the bankruptcy case, but inside of one year. The transfers are not, therefore, avoidable under Section 547(b) unless Ms. Hilburn was an insider as of the date of the transfers. Ms. Hilburn asserts that she was not an insider because she and Ms. Ponsen were estranged at the time of the transfers, and that Ms. Hilburn did not have the requisite degree of control – nor any control, for that matter – over her sister's financial affairs in order to be considered an insider. Ms. Hilburn's arguments, though, are contradicted by the plain language of the statutory definition of an insider.

This case is very similar to, if not controlled by, that of *In re Paschall,* 408 B.R. 79 (2009). In *Paschall,* the Trustee brought preference claims against the Debtor's ex-spouse. 408 B.R. at 81-82. At the time of the transfers, the parties were still legally married, but were in the process of a divorce. *Id.* at 82. The properties were transferred pursuant to the terms of a Marital Agreement. *Id.* The Debtor executed quitclaim Deeds for both properties on August 23, 2006. *Id.*

The Deed for one property, the Fauquier County property, was recorded on August 25, 2006. *Id.* The Deed for the other property, the Midlothian property, was recorded on September 5, 2006. *Id.* at 83. The Circuit Court conducted a hearing in the divorce proceeding on July 31, 2006 (before the two Deeds were executed), and entered a Final Decree of Divorce on September 13, 2006 – less than a month after recordation of the Fauquier County Deed, and only eight days after recordation of the Midlothian Deed. *Id.*

The Bankruptcy Court granted judgment for the Trustee. *Id.* at 83-84. The defendant appealed. *Id.* at 84. Judge Hudson held that whether an individual is an insider is determined as of the date of the transfer. *Id.* at 86. He further held that, even though the parties were in the middle of a divorce, the transferee was still the spouse of the debtor as of the dates of the recordation of the Deeds, and therefore, was an insider. *Id.*

A number of cases have explored the issue of non-statutory insiders, generally holding that the Trustee must show a closeness or a degree of control over the financial affairs of the debtor, in order to establish insider status. See, e.g., *In re Longview Aluminum*, LLC, 657 F.3d 507, 509 (7th Cir. 2011); *Capmark Financial Group Inc. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 345 (S.D.N.Y. 2013); *In re QuVIS, Inc.,* 469 B.R. 353, 370 (D. Kan. 2012); *Carr & Porter, LLC*, 416 B.R. 239, 254 (Bankr. E.D. Va. 2009). For statutory insiders, sometimes described as "per se" insiders (that is, persons within the literal definitions of "insider" under Section 101(31)), the courts agree that once a party comes within the definition of an insider, no further inquiry is necessary. *Miller v. Brady (In re Enterprise Acquisition Partners, Inc.),* 319 B.R. 626, 631 (B.A.P. 9th Cir. 2004); *Shults & Tamm v. Ruly*, 2013 WL 2405218, at *4 (D. Haw. 2013); *In re Anderson*, 165 B.R. 482, 485 (Bankr. D. Or. 1994). In sum, although there are cases dealing with expanding the definition of "insider" for persons who are alleged to be non-

statutory insiders, there appears to be no support for the proposition that a statutory, or per se, insider, can be anything other than an insider.

The cases relied upon by Ms. Hilburn are distinguishable from this case. For example, in *In re Crawford*, 454 B.R. 262 (Bankr. D. Mass. 2011), a non-statutory insider case, the bankruptcy court found that the relationship of the parties was sufficiently like partners, in order to warrant insider status. In *In re Schuman*, 81 B.R. 583 (9th Cir. B.A.P. 1987), the debtor was divorced and remarried at the time of the transfer at issue. And, in *In re Global Aviation Holdings, Inc.,* 478 B.R. 142 (Bankr. E.D.N.Y. 2012), the Court dealt with whether employees who held positions with titles such as "Director of Safety" or "Director of Maintenance" were in fact officers and directors of the company, for purposes of approving a Key Employee Retention Program (KERP).

Here, the Debtor and Ms. Hilburn were sisters at the time of the transfers. Ms. Hilburn, therefore, is a statutory insider of the Debtor.

   *D.  Was Ms. Ponsen Insolvent on the Dates of the Transfers?*

Finally, Ms. Hilburn asserts that the Trustee has not met her burden of proof on the issue of insolvency. The term "insolvent" is defined by the Code as balance sheet insolvency – that "the sum of [the debtor's] debts is greater than all of [the debtor's] property, at a fair valuation." 11 U.S.C. § 101(32)(A). There is no statutory presumption of insolvency outside of the 90 days preceding the petition. 11 U.S.C. 547(f) ("the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition"). It is, therefore, the Trustee's burden to prove that the Debtor was insolvent on the dates of the transfers.

In this case, the parties entered into the Settlement Agreement on May 2, 2011. The Debtor transferred the Properties shortly thereafter. In addition to transferring the Properties, the

Debtor agreed to execute and deliver a Promissory Note in the amount of $240,000, this being the agreed deficiency after the transfer of the three Properties. The Settlement Agreement states: "Ponsen, *having no additional assets from which to make up the deficiency…*" (Emphasis added). There is, therefore, an admission of insolvency by the Debtor shortly before the transfers, an admission to which Ms. Hilburn was a signatory. Further, Ms. Hilburn's allegations in her dischargeability Complaint were to the effect that Ms. Ponsen lacked the ability to pay the Note, when Ms. Ponsen signed the Settlement Agreement and the Note. Adv. Pro. 12-01046-BFK, Complaint, ¶¶ 51, 52.

The Trustee has met her burden of proof, with this admission of insolvency. Ms. Hilburn, on the other hand, has come forward with nothing more than vague denials of Ms. Ponsen's insolvency in an effort to avoid summary judgment. Ms. Hilburn has not rebutted the Trustee's evidence of insolvency.

The Court concludes that the Trustee has met her burden of proof on insolvency, and that Ms. Hilburn has not rebutted the Trustee's evidence of insolvency. The Court, therefore, will grant the Trustee's Motion.

**Conclusion**

For the foregoing reasons, the Court will grant the Trustee's Motion for Summary Judgment. The Trustee will submit a final Judgment Order granting the relief requested in her Complaint, with the Defendant's counsel's endorsement, within 10 days of the date hereof.

Date: Oct 21 2013                                    /s/ Brian F. Kenney

                                                     Brian F. Kenney

Alexandria, Virginia                                 United States Bankruptcy Judge
                                                     Entered on Docket: October 22, 2013

Copies to:

Janet M. Meiburger, Esquire
The Meiburger Law Firm, P.C.
1493 Chain Bridge Rd., Suite 201
McLean, VA 22101
Chapter 7 Trustee
Plaintiff

Sandra Harrison Hilburn
225 Sandy Run Drive
Greer, SC 29651-7410
Defendant

Madeline A. Trainor, Esquire
Cyron & Miller, LLP
100 N. Pitt Street, Suite 200
Alexandria, VA 22314
Counsel for the Defendant